# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.

**INDICTMENT**

1:21CR13 AW/GRJ

JEREMIE SAINTVIL
  a/k/a "JEREMIE STVIL"
  a/k/a "JEREMIE SAINT VIL"
  a/k/a "JEREMI STVIL"

                            /

**THE GRAND JURY CHARGES:**

## COUNT ONE

### A. INTRODUCTION

At all times material to this Indictment:

1.    The United States Small Business Administration ("SBA") was an executive-branch agency of the United States government that provides support to entrepreneurs and small businesses. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters.

2.    As part of this effort, the SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees.



FILED USDC FLND GV
MAR 23 '21 PM 1:42

## The Paycheck Protection Program

3.      The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020, and was designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic.  One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the SBA Paycheck Protection Program ("PPP").  In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

4.      In order to obtain a PPP loan, a qualifying business was required to submit a PPP loan application, called an SBA Form 2483.  The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.  In the PPP loan application, the small business (through its authorized representative) was required to certify, among other things, its: (a) average monthly payroll expenses, and (b) number of employees.  These figures were used to calculate the amount of money the small business was eligible to receive under the PPP.  In addition, businesses applying for a PPP loan were required to provide documentation showing their payroll

expenses and that they were in business as of February 15, 2020. Further, businesses applying for a PPP loan were required to make good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations, and that they intended to use loan proceeds only for the authorized, and not any duplicative, purposes.

5. PPP loan applications were required to be signed by an authorized representative of the business. By signing PPP loan applications, applicants attested that the information provided in the application and in all supporting documents and forms was true and accurate, and that the applicant understood that knowingly making a false statement to obtain a PPP loan was a crime.

6. PPP loan proceeds must have been used by the business on certain permissible expenses- payroll costs, interest on mortgages, rent, and utilities. The SBA allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time (usually eight weeks of receiving the proceeds) and used at least 75% of the PPP loan proceeds on payroll expenses.

7. A PPP loan application was required to be processed by a participating financial institution ("the lender"). If a PPP loan application was approved, the lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the loan application, including information

about the borrower, the total amount of the loan, and the listed number of employees, was electronically transmitted by the lender to the SBA in the course of processing the loan.

## Economic Injury Disaster Loans

8.      Another related response to the COVID-19 outbreak was an expansion of an existing disaster-related program – the Economic Injury Disaster Loan ("EIDL") – to provide for loan assistance (including $10,000 advances) for small businesses and other eligible entities for loans up to $2 million.  The EIDL proceeds could have been used to pay fixed debts, payroll, accounts payable, and other bills that could have been paid had the disaster not occurred; however, such loan proceeds were not intended to replace lost sales or profits, or for the expansion of a business.

9.      Unlike certain other types of SBA-guaranteed loans, EIDL funds were issued directly from the United States Treasury, and applicants applied for EIDL funds directly through the SBA via an online portal and application.  The EIDL application process, which also used certain outside contractors for system support, collected information concerning the business and the business owner, including: information about the gross revenues for the business prior to January 31, 2020; and the cost of goods sold.  Applicants electronically certified that the information provided was true and accurate and were warned that any false statement or

misrepresentation to the SBA, or any misapplication of loan proceeds may result in sanctions, including criminal penalties.

Financial Institutions

10. Florida Credit Union ("FCU"), Navy Federal Credit Union ("NFCU"), and Guardians Credit Union ("GCU") were financial institutions, the deposits of which were federally insured by the National Credit Union Share Insurance Fund. FCU, NFCU, and GCU offered PPP loans to its customers.

11. Celtic Bank ("Celtic"), Wells Fargo Bank, N.A. ("Wells Fargo"), TD Bank, N.A. ("TD Bank"), Bank of America, N.A. ("BOA"), U.S. Century Bank ("USCB"), and Bank OZK ("BOZK") were financial institutions, the deposits of which were federally insured by the Federal Deposit Insurance Corporation. Celtic, Wells Fargo, TD Bank, BOA, USCB, and BOZK offered PPP loans to its customers.

12. BOA, Capital One Bank, N.A. ("Capital One"), J.P. Morgan Chase Bank ("Chase"), American Express ("AMEX"), and Discover Card ("Discover") were financial institutions, the deposits of which were federally insured by the Federal Deposit Insurance Corporation. BOA, Capital One, Chase, AMEX, and Discover offered debit cards and credit cards to its customers.

## Business Entity Applicants

### HEJ Holding, Inc.

13.     HEJ Holding, Inc., a purported corporation with a Tax Identification Number ("TIN") ending in 6480 and a business address in Florida, was not a business entity that was registered to do business in Florida. HEJ Holding, Inc. did not have 17 employees, nor did it pay an average of approximately $64,000 in monthly payroll expenses.

14.     R.J.H., born in 1926, was a resident of a senior living facility that offered assisted living, memory, and respite care services. R.J.H. was not the Chief Executive Officer ("CEO") of any businesses, especially any in Florida, including HEJ Holding, Inc.

### Root Capital, Inc.

15.     Root Capital, Inc., a purported corporation with a TIN ending in 4330 and a business address in Florida, was not a business entity that was registered to do business in Florida. Root Capital, Inc. did not have 17 employees, nor did it pay an average of approximately $80,000 in monthly payroll expenses.

16.     R.H.R., born in 1938, was a resident of a senior living facility located in Florida. R.H.R. was not the CEO of any businesses, especially in Florida, including Root Capital, Inc.

### Verb World, Inc.

17. Verb World, Inc., a purported corporation with a TIN ending in 4787 and a business address in Florida, was not a business entity that was registered to do business in Florida. Verb World, Inc. did not have seven employees, nor did it pay an average of approximately $41,000 in monthly payroll expenses.

### Kramer Corp

18. Kramer Corp, a purported corporation with a TIN ending in 7622 and a business address in Florida, was not a business entity that was registered to do business in Florida. Kramer Corp did not have 17 employees, nor did it pay an average of approximately $76,000 in monthly payroll expenses.

19. B.I.K., born in 1931, was a resident of a senior living facility located in Florida. B.I.K. was not the CEO of any businesses, especially in Florida, including Kramer Corp.

### Martin Consulting, Inc.

20. Martin Consulting, Inc., a purported corporation with a TIN ending in 4398 and a business address in Florida, was not a business entity that was registered to do business in Florida. Martin Consulting, Inc. did not have 17 employees, nor did it pay an average of approximately $63,000 in monthly payroll expenses.

21. M.J.J., born in 1920, was a resident of a senior living facility located in Florida. M.J.J. was not the CEO of any businesses, especially in Florida, including Martin Consulting, Inc.

## Doherty and Associate, Inc.

22. Doherty and Associate, Inc., a purported corporation with a TIN ending in 0492 and a business address in Florida, was not a business entity that was registered to do business in Florida. Doherty and Associate, Inc. did not have 17 employees, nor did it pay an average of approximately $63,000 in monthly payroll expenses.

23. R.R.D., born in 1929, was a resident of a senior living facility located in Florida. R.R.D. was not the CEO of any businesses, especially in Florida, including Doherty and Associate, Inc.

## McCartney and Associates, Inc.

24. McCartney and Associates, Inc., a purported corporation with a TIN ending in 2888 and a business address in Florida, was not a business entity that was registered to do business in Florida. McCartney and Associates, Inc. did not have 17 employees, nor did it pay an average of approximately $42,000 in monthly payroll expenses.

25. T.L.M., born in 1938, was a resident of a senior living facility located in Florida. T.L.M. was not the CEO of any businesses, especially in Florida, including McCartney and Associates, Inc.

## RMC Acceptance, Inc.

26. RMC Acceptance, Inc., a purported corporation with a TIN ending in 0319 and a business address in Florida, was not a business entity that was registered to do business in Florida. RMC Acceptance, Inc. did not have 17 employees, nor did it pay an average of approximately $84,000 in monthly payroll expenses.

27. R.M.C., born in 1940, was a resident of a senior living facility located in Florida. R.M.C. was not the CEO of any businesses, especially in Florida, including RMC Acceptance, Inc.

## Recovery and Empowerment for Family and Youth Services Center, Inc.

28. Recovery and Empowerment for Family and Youth Services Center, Inc., a corporation with a TIN ending in 3284 and a business address in Florida, was a business entity that was registered to do business in Florida. Recovery and Empowerment for Family and Youth Services Center, Inc. had not filed any federal income tax returns since 2016 and did not use any third-party payroll services.

29. E.S., born in 1942, was a relative of the defendant, **JEREMIE SAINTVIL (a/k/a JEREMIE STVIL, JEREMIE SAINT VIL, JEREMI STVIL)**. E.S. was an owner and director of Recovery and Empowerment for Family and Youth Services Center, Inc.

## B. THE CHARGE

Between on or about February 1, 2018, and on or about June 30, 2020, in the Northern District of Florida and elsewhere, the defendant,

**JEREMIE SAINTVIL,**
**a/k/a "JEREMIE STVIL,"**
**a/k/a "JEREMIE SAINT VIL,"**
**a/k/a "JEREMI STVIL,"**

did knowingly and willfully execute and attempt to execute a scheme and artifice to defraud a federally insured financial institution, that is, FCU, NFCU, GCU, Celtic, Wells Fargo, TD Bank, BOA, USCB, BOZK, Capital One, Chase, AMEX, and Discover, and to obtain moneys owned by and under the custody and control of FCU, NFCU, GCU, Celtic, Wells Fargo, TD Bank, BOA, USCB, BOZK, Capital One, Chase, AMEX, and Discover by means of materially false and fraudulent pretenses, representations, and promises.

## C. THE FRAUDULENT SCHEME

It was part of the scheme that the defendant, **JEREMIE SAINTVIL, a/k/a "JEREMIE STVIL," a/k/a "JEREMIE SAINT VIL," a/k/a "JEREMI STVIL,":**

1. Fraudulently obtained and possessed the means of identification and the identification documents of elderly individuals, including that of E.L.H., R.J.H., R.H.R., B.I.K., M.J.J., R.R.D., T.L.M., R.M.C., and E.S.

2. Fraudulently applied for and opened accounts and lines of credit at financial institutions and credit card companies in the names of – and using the means of identification and the identification documents that belonged to – elderly individuals, including M.B., C.L.F., E.L.H., R.J.H., R.H.R., B.I.K., M.J.J., R.R.D., T.L.M., and R.M.C.

3. Fraudulently obtained and possessed physical checks, debit cards, and credit cards in the names of elderly individuals, including R.J.H., R.H.R., B.I.K., M.J.J., and R.R.D.

4. Fraudulently obtained and possessed debit card numbers and credit card numbers linked to bank accounts and lines of credit that were fraudulently opened in the names of – and using the means of identification and the identification documents that belonged to – elderly individuals, including C.L.F., E.L.H., R.H.R., M.J.J., and R.R.D.

11

5. Used the services of an electronic payments processor to transfer funds from the fraudulently obtained lines of credit – including those in the names of R.H.R., C.L.F., M.J.J., and R.R.D. – into bank accounts at Wells Fargo which were fraudulently opened using the PII of elderly individuals, including M.B., C.L.F., and R.H.R.

6. Made and caused to be made false and fraudulent representations in SBA PPP loan applications and in supporting loan documents submitted to FCU, NFCU, GCU, Celtic, Wells Fargo, TD Bank, BOA, USCB, and BOZK in the name of inactive and fictitious businesses, namely, HEJ Holding, Inc., Root Capital, Inc., Martin Consulting, Inc., Doherty and Associate, Inc., Kramer Corp, RMC Acceptance, Inc., McCartney and Associates, Inc., Recovery and Empowerment, Inc., and Verb World, Inc., using the means of identification and the identification documents of himself and of elderly individuals, including R.J.H., R.H.R., B.I.K., M.J.J., R.R.D., T.L.M., R.M.C., and E.S., in order to falsely qualify for SBA PPP loans.

7. Specifically attempted to cause FCU to issue an SBA PPP loan and disburse SBA PPP loan proceeds to him based upon a loan application, loan documents, and emails that falsely represented that: (a) he was a nonagenarian named R.J.H., the CEO of HEJ Holding, Inc., and (b) that HEJ Holding, Inc. had 17 employees and had an average monthly payroll of approximately $63,000.

8.    Electronically mailed and submitted false and fraudulent documentation to FCU, NFCU, GCU, Celtic, Wells Fargo, TD Bank, BOA, USCB, and BOZK for the SBA PPP loan applications.

9.    Specifically mailed and submitted, by electronic means, documentation to FCU for the SBA PPP loan application, including:

    a.    a Florida Identification Card in the name of R.J.H.,

    b.    a false 2019 U.S. Corporation Income Tax Return (Form 1120) for HEJ Holding, Inc.,

    c.    a false 2019 Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940) for HEJ Holding, Inc.,

    d.    a false 2020 Quarter 1 Employer's Quarterly Federal Tax Return (Form 941),

    e.    a false Internal Revenue Service Form SS-4 regarding HEJ Holding, Inc, and

    f.    a false Paychex document labeled "Paycheck Protection Program Data"

10.    Communicated, via email and telephone, with the financial institutions at which he applied for SBA PPP loans about the status of his loan applications and the funding of such loans.

11.    Fraudulently obtained and attempted to obtain more than $1,500,00 in monies, funds, and credits owned by and under the custody and control of FCU, NFCU, GCU, Celtic, Wells Fargo, TD Bank, BOA, USCB, BOZK, Capital One, Chase, AMEX, and Discover by this conduct.

## D.  EXECUTION OF THE SCHEME

Between on or about May 4, 2020, and on or about May 21, 2020, for the purpose of executing and attempting to execute this fraudulent scheme, the defendant, **JEREMIE SAINTVIL, a/k/a "JEREMIE STVIL," a/k/a "JEREMIE SAINT VIL," a/k/a "JEREMI STVIL,"** did knowingly and willfully submit false and fraudulent representations to FCU in an SBA PPP loan application, and in supporting loan documents and emails.

In violation of Title 18, United States Code, Sections 1344 and 2.

## COUNT TWO

## A.  INTRODUCTION

The allegations of Section A of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

## B.  THE CHARGE

Between on or about May 4, 2020, and on or about May 21, 2020, in the Northern District of Florida, the defendant,

14

**JEREMIE SAINTVIL,**
**a/k/a "JEREMIE STVIL,"**
**a/k/a "JEREMIE SAINT VIL,"**
**a/k/a "JEREMI STVIL,"**

knowingly made a false statement to FCU, a federally insured financial institution, for the purpose of influencing the action of FCU in connection with a loan, that is, the defendant submitted an application for an SBA PPP loan that contained a false business legal name, false business address, false business TIN, false average monthly payroll cost, false number of employees, and false owner name, and false supporting documentation, namely:

      a.     a false 2019 U.S. Corporation Income Tax Return (Form 1120) for HEJ Holding, Inc.,

      b.     a false 2019 Employer's Annual Federal Unemployment (FUTA) Tax Return (Form 940) for HEJ Holding, Inc.,

      c.     a false 2020 Quarter 1 Employer's Quarterly Federal Tax Return (Form 941),

      d.     a false Internal Revenue Service Form SS-4 regarding HEJ Holding, Inc, and

      e.     a false Paychex document labeled "Paycheck Protection Program Data."

In violation of Title 18, United States Code, Section 1014.

## COUNT THREE

## A. INTRODUCTION

The allegations of Section A of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

## B. THE CHARGE

Between on or about May 4, 2020, and on or about May 21, 2020, in the Northern District of Florida, the defendant,

**JEREMIE SAINTVIL,**
**a/k/a "JEREMIE STVIL,"**
**a/k/a "JEREMIE SAINT VIL,"**
**a/k/a "JEREMI STVIL,"**

did knowingly possess and use, without lawful authority, a means of identification of another person, to wit: the name, social security number, date of birth, and Florida Identification Card number of R.J.H., during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit: bank fraud as charged in Count One of this Indictment, and making fraudulent statements to a federally insured institution as charged in Count Two of this Indictment.

In violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT FOUR

## A. INTRODUCTION

The allegations of Section A of Count One are hereby realleged and incorporated by reference as if fully set forth herein.

## B. THE CHARGE

Between on or about May 4, 2020, and on or about May 21, 2020, in the Northern District of Florida, in a matter within the jurisdiction of the executive branch of the Government of the United States, that is, the SBA's administration of its PPP and EIDL program, the defendant,

**JEREMIE SAINTVIL,**
**a/k/a "JEREMIE STVIL,"**
**a/k/a "JEREMIE SAINT VIL,"**
**a/k/a "JEREMI STVIL,"**

did knowingly and willfully falsify a material fact; make materially false, fictitious, and fraudulent statements and representations; and make and use a false document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry, to wit, the defendant falsely stated in an SBA PPP loan application (SBA Form 2483) that he submitted to FCU to obtain an SBA PPP loan that:

      a.      he was a nonagenarian named R.J.H., the CEO of HEJ Holding, Inc.,

b. HEJ Holding, Inc. had 17 employees,

c. HEJ Holding, Inc. had an average monthly payroll of approximately $63,000,

d. all SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule,

e. HEJ Holding, Inc. was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC,

f. Current economic uncertainty made the SBA PPP loan necessary to support ongoing operations of HEJ Holding, Inc.,

g. the SBA PPP loan funds will be used to retain works and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the PPP Rule, and

h. the information provided in the SBA PPP loan application and the information provided in all supporting documents and forms was true and accurate in all material respects,

whereas, in truth and in fact, and as the defendant well knew, such representations were contrary to the information described in Paragraphs 13 and 14 of Section A of Count One.

In violation of Title 18, United States Code, Section 1001(a).

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Three of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. From his engagement in the violations alleged in Counts One through Three of this Indictment, the defendant,

**JEREMIE SAINTVIL,**
**a/k/a "JEREMIE STVIL,"**
**a/k/a "JEREMIE SAINT VIL,"**
**a/k/a "JEREMI STVIL,"**

shall forfeit to the United States, pursuant to Title 18, United States Code, Sections 982(a)(2) and (3), and Title 28, United States Code, Section 2461(c), any and all of the defendants' right, title, and interest in any property, real and personal, constituting, and derived from, proceeds traceable to such offenses. The United States will also seek a forfeiture money judgment for a sum of money equal to the value of any property, real or personal, which constitutes or is derived from proceeds traceable to these offenses. The property to be forfeited includes, but is not limited to, the following:

1.     Documents, identification documents, and electronics seized by the United States Internal Revenue Service Criminal Investigation and the Federal

19

Bureau of Investigation, pursuant to a search and seizure warrant executed on or about June 18, 2020, including, but not limited to, the following:

    a.      MacBook Pro bearing serial number C02CP7WQMD6T,

    b.      Apple iMac bearing serial number D25PX0HQFY14,

    c.      Apple iPad A-2069 bearing serial number DMPCK036NTJ3,

    d.      Apple iPad A-1652 bearing serial number DLXR87LFGMW3,

    e.      Apple iPad A-1671 bearing serial number DLXV305CHP34,

    f.      Apple iPad A-2069 bearing serial number DMPCG10HNTJ2,

    g.      Apple iPhone A-1387,

    h.      Lacie External Hard Drive bearing serial number NL34M8SX,

    i.      Seagate External Hard Drive bearing serial number NL383D0H,

    j.      Apple iPhone-A-1661,

    k.      Seagate External Hard Drive bearing serial number NL383CTP,

    l.      Apple iPad,

    m.      Apple Time Capsule A1409 bearing serial number C86JN50UDM73,

    n.      SanDisk USB Drive, and

    o.      AT&T U-Verse ARRIS Router bearing serial number 194146947635296,

2. The Wells Fargo account ending in 2467, held in the name of Root Capital,

3. The Ally Bank accounts ending in 8432 and 8421, held in the name of R.H.R.,

4. The Ally Bank accounts ending in 3650 and 8986, held in the name of M.J.J.,

5. The GCU account ending in 77-7, held in the name of Doherty and Associates, Inc., and

6. The NFCU account ending in 3857, held in the name of Kramer Corp.

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendant:

    i.    cannot be located upon the exercise of due diligence;

    ii.    has been transferred, sold to, or deposited with a third party;

    iii.    has been placed beyond the jurisdiction of this Court;

    iv.    has been substantially diminished in value; or

    v.    has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c),

to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

3/23/2021
_____
DATE

JASON R. COODY
Acting United States Attorney

JUSTIN M. KEEN
Assistant United States Attorney